UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| DERON L. GRINAGE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:06-cv-00835-RLH-GWF |
| | ) | |
| vs. | ) | **FINDINGS AND** |
| | ) | **RECOMMENDATION** |
| CORRECTIONS OFFICER LEYBA; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' Motion for Summary Judgment (#38), filed on August 30, 2007; Plaintiff's Opposition to Defendants' Motion for Summary Judgment (#41), filed September 18, 2007; Defendants' Reply in Support of Motion for Summary Judgment (#43), filed on October 3, 2007. Defendants' Motion has been referred to the undersigned for preparation of findings and recommendations. The Court conducted a hearing in this matter on October 9, 2007.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff Deron Grinage has brought this action pursuant to 42 U.S.C. § 1983. In Count I of his Amended Complaint (#33), filed on May 22, 2007, Plaintiff alleges that his rights to Due Process under the Fourteenth Amendment were violated when he was assaulted, beaten and subjected to excessive physical force by the Defendant officers in the Clark County Detention Center. In Count II, Plaintiff alleges that John Doe Defendants 1, 2 and 3 violated his Due Process Rights under the Fourteenth Amendment by depriving him of a proper hearing by the "conduct adjustment board" ("CAB") which resulted in his being placed in an isolation cell for three days after the incident. In Count III, Plaintiff

alleges that John Doe 4 violated his Due Process Rights under the Fourteenth Amendment by placing him in an extremely dirty holding cell with an inoperable and filthy toilet. Defendants seek summary judgment on Count I of Plaintiff's Amended Complaint on the grounds that they did not use excessive force and that Defendants are entitled to qualified immunity for any constitutional violation that may have occurred. Defendants seek summary judgment on Counts II and III of the Amended Complaint on the grounds that Plaintiff has only sued "Doe defendants" on these claims and has failed to name the actual officers allegedly responsible for violating his civil rights.

A.   **Evidence Regarding Excessive Use of Force Claim.**

In support of their motion, the Defendants have attached a copy of the transcript of Plaintiff's deposition and corrections to his testimony, *Exhibits "A"* and *"B",* and a digital video recording ("DVD") of the May 31, 2006 incident involving Plaintiff and the Defendant officers. *Exhibit "C".* Defendants have also provided an affidavit by Lieutenant Scott Zolman of the Las Vegas Metropolitan Police Department stating that the video recording is an unaltered, accurate depiction of the incident on May 31, 2006. See *Defendants' Errata to Motion for Summary Judgment (#42), Exhibit "B".* No affidavits by the Defendant officers have been provided regarding their version of events. Rather, Defendants rely on Plaintiff's deposition testimony and the video recording in arguing that they are entitled to summary judgment on Plaintiff's excessive force claim.

Plaintiff testified at his deposition that he had been incarcerated in the Clark County Detention Center ("CCDC") for approximately two months prior to May 31, 2006 and had previously experienced other lock downs and had gone to his cell when they were announced. *Exhibit "A",* pp. 30-31. Plaintiff testified that on May 31, 2006, he had just gotten through to an attorney on the telephone when Defendant Officer Leyba announced the lock down over the public address system. Plaintiff acknowledged that when Officer Leyba announced the lock down, other inmates began going to their cells. *Exhibit "A",* p. 23. Plaintiff stated that he put the phone down and approached the control room to request additional time to finish his phone conversation. When Plaintiff asked for additional time, Officer Leyba became very agitated and started cursing at him, telling him to "Get your fucking ass in your fucking cell before I put your ass in the hole." Plaintiff testified that he responded by saying "Your not talking to your F-ing kids." *Exhibit "A",* pp. 14-15, 22. Although Plaintiff testified at his

1  deposition that he was walking toward his cell when he responded to Officer Leyba, *Exhibit "A",* p. 24,
2  he later corrected his testimony to state that he was about to start walking to his cell when he verbally
3  responded to Officer Leyba. *Motion (#38), Exhibit "B".*

4        According to Plaintiff, Officer Leyba immediately exited the control room and "grabbed me by
5  the throat and started choking me and digging his fingernails into my neck, at which time two more
6  officers, I believe it was, joined in." *Motion (#38), Exhibit "A",* p. 15.  Officer Leyba did not say
7  anything or give Plaintiff any further order before grabbing him.  Plaintiff testified that he was stunned
8  when Officer Leyba grabbed him and he was unable to say what he did immediately thereafter.  *Id.,* pp.
9  28-32.  According to Plaintiff, Defendant Officers Peal and Boone then approached and grabbed him
10 and began pulling him around.  Additional officers also responded.  According to Plaintiff, Officer
11 Aspiazu approached and punched him in the mouth "as hard as he could" and knocked him down.  *Id.,*
12 p. 39.  Plaintiff testified that he believes Officer Aspiazu handcuffed him and then pulled him up from
13 the floor by the handcuffs.  He testified that he was then dragged out to the corridor and taken to the
14 elevator.  Plaintiff states that he was then slammed head first into the rear wall of the elevator.  Plaintiff
15 was not sure which guards were escorting him or which officer slammed him into the wall of the
16 elevator, although he believes it may have been Officer Aspiazu.  *Id.*, pp. 44-48.  He was then taken to
17 the "hole" where he was stripped and left in an isolation cell.  *Id.*, pp. 48-49.

18       The video recording shows an inmate, presumably the Plaintiff, approach the open door way of
19 the control room located on one side of the common area of the jail.  Plaintiff stands in the open
20 doorway, looks into the control room and appears to converse with someone inside.  There is no audio
21 on the recording.  A white haired officer exits the doorway, followed by a second officer who appears to
22 place his hand on the Plaintiff's upper back and shoulder area.  Based on Plaintiff's testimony, this
23 second officer is presumably Officer Leyba.  Based on Defendants' unverified Answer to Interrogatory
24 No. 3, attached to Plaintiff's Opposition (#41) as Exhibit "A", it appears that the white haired officer
25 shown on the video is Defendant Peal.  Plaintiff and Officer Leyba, followed by Officer Peal,
26 immediately move around a corner of the office and substantially out of view of the camera.  This
27 movement occurs in one continuous motion from the time that Officer Leyba exits the control room.  It
28 is evident from the video that a struggle then ensues, which is joined in by several additional officers.

For the most part, only the backs and legs of the officers are visible. Plaintiff is not visible on camera during most of the struggle and it cannot be determined from the video what resistence, if any, he is making during the struggle. At one point, however, it appears that Plaintiff pulls away from the guards and two or more officers tackle him. The struggle then moves back out of camera view until several officers are seen taking Plaintiff in handcuffs into camera view and toward the camera which is located above the scene. The group then passes out of view beneath the camera. There is no video of the alleged events in the corridor or what occurred at the elevator where Plaintiff alleges he was slammed head first into the rear wall of the elevator.

In his affidavit in support of his Opposition to Defendants' Motion for Summary Judgment (#41), Plaintiff states that he was beaten by Officers Leyba, Peal, Boone and Aspiazu outside the view of the camera and that he was slammed against the wall of the elevator after being escorted out of the unit. *Plaintiff's Affidavit,* ¶¶ 7, 12. He also states that he was not allowed to seek medical assistance and that as a result of the incident he suffered a busted lip, injury to the ankle and shoulders, a knot on the forehead, cut wrist and sore back and neck. *Id.,* ¶¶ 11, 13.[1]

## DISCUSSION

**A.    Summary Judgment Standard.**

Summary judgment is appropriate when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288-89 (9th Cir.1987). The moving party bears the burden of showing that there is no material factual dispute. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324; *Eisenberg,* 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v.*

---

[1] Although Plaintiff's amended complaint alleges that he was momentarily knocked unconscious after being slammed into the elevator wall, his affidavit does not list this as an injury.

1  *Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991).

2  Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325. The burden then shifts to the opposing party to produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists. *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 323.

**B.     Substantive Legal Standard Re: Plaintiff's Excessive Force Claim.**

Although Defendants argue that Plaintiff's excessive force claim should be analyzed under the Fourth Amendment's prohibition against unreasonable seizures, under the facts of this case, the applicable constitutional provision is the Due Process Clause of the Fourteenth Amendment.  In *Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1870,104 L.Ed.2d 443 (1989), the Supreme Court rejected the notion that all excessive force claims brought under § 1983 are governed by a single generic standard.  The Court stated that analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force.  In most instances, the constitutional right at issue will be either the Fourth Amendment's prohibition against unreasonable seizures or the Eighth Amendment's ban on cruel and unusual punishment.  The Eighth Amendment applies only after conviction and the Court has previously dismissed Plaintiff's claim predicated under the Eighth Amendment.

While the Fourth Amendment governs the treatment of an arrestee up until the time he or she is released or held in legal custody pending trial, *Graham* noted that the question whether the Fourth Amendment continues to provide individuals with protection against deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins has not been resolved. The Due Process Clause, however, protects a pretrial detainee from the use of excessive force that

amounts to punishment. *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10, citing *Bell v. Wolfish,* 441 U.S. 520, 535-39, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175, 1197 (9th Cir. 2002), the court applied the Fourth Amendment to an excessive force claim where the officers allegedly used excessive force against an arrestee who died in custody shortly after he was taken to jail and prior to any court appearance. *Gibson* relied on *Pierce v. Multnomah County, Or.*, 76 F.3d 1032, 1043 (9th Cir. 1996), which held that the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest. Although the parties have not provided clear information regarding Plaintiff's status on May 31, 2006, Plaintiff testified that he had been in CCDC custody for two months at the time of the incident which indicates that he was a post-arraignment pretrial detainee. It therefore appears that Plaintiff was well beyond the point where the Fourth Amendment would still govern the use of excessive force. The proper constitutional limitation for analyzing Plaintiff's excessive use of force claim therefore is the Due Process Clause of the Fourteenth Amendment. *See Guillory v. Rupf*, 2007 WL 2881954 (N.D. Cal.) *6, holding that excessive use of force claim by post-arraignment pretrial detainee is properly analyzed under the Due Process Clause.

In *White v. Roper,* 901 F.2d 1501, 1507 (9th Cir.1990), the court stated that the following standards apply in evaluating an excessive use of physical force claim under the Due Process Clause:

> We have stated that "egregious government conduct in the form of excessive and brutal use of physical force constitutes a violation of substantive due process" cognizable under section 1983. *Smith v. City of Fontana,* 818 F.2d 1411, 1417 (9th Cir.) (emphasis deleted), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *see also Gaut v. Sunn,* 810 F.2d 923, 924 (9th Cir.1987) (per curiam) ("[p]rison beatings which 'shock the conscience' are actionable under section 1983"). "[R]esolving a substantive due process claim requires courts to balance several factors focusing on the reasonableness of the officers' actions given the circumstances." *Smith,* 818 F.2d at 1417. These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. *Id.; see also Gaut,* 810 F.2d at 924 (listing these same factors); *Hoptowit v. Ray,* 682 F.2d 1237, 1251 (9th Cir.1982) ("guards may use force only in proportion to the need in each situation).

. . .

The plaintiff in *White* alleged that jail officers violated his due process rights when they attempted to place him in a cell with a dangerous inmate. Although the Ninth Circuit held that there was a genuine issue of material fact on plaintiff's claim that the officers were guilty of deliberate indifference in attempting to force him into the cell with the dangerous inmate, it upheld summary judgment dismissing his excessive force claim. The court stated:

> White does not dispute that he refused to enter Shaw's cell and backed away from Sergeant Roper, moving down the cell block corridor. Even if White did so to avoid being injured by Shaw, his actions created a need for Sergeant Roper and the deputies to apply reasonable force to control him. The amount and type of force used is disputed by the parties. However, White has not shown that he required or even that he requested medical treatment for the cut wrist and the bruises he allegedly suffered. White does not allege that he lost consciousness at any time, or that he suffered any permanent injury. We conclude that White has not made a showing sufficient to establish that the use of force against him was "excessive" or "brutal." The district court properly granted summary judgment on this claim.

*White*, 901 F.2d at 1507.

In *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 998-99 (1992), the plaintiff alleged that two prison guards, who were escorting him in handcuffs to the administrative lock down area, punched and kicked him, causing him to suffer minor bruises, swelling to his face, mouth and lip, loosened teeth and a cracked partial dental plate. The district court found that the officers used excessive force and awarded damages to the plaintiff. The court of appeals reversed on the grounds that under the Eighth Amendment, plaintiff was required to prove that he sustained significant injury. The Supreme Court reversed the court of appeal's decision and stated that the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in the particular situation, or "instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." The Court noted that not every malevolent touch by a prison guard gives rise to a federal cause of action, and that "the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' (citation omitted)." *Hudson*, 112 S.Ct. at 1000. The Court held, however, that unjustified beatings of prisoners is the type of conduct sufficient to constitute

Case 2:06-cv-00835-RLH-GWF   Document 45   Filed 12/12/07   Page 8 of 18

1  violation of the Eighth Amendment and the fact that the plaintiff does not suffer serious physical injury
2  does not preclude his claim.  Under a similar due process analysis, evidence that detention officers
3  engaged in an unprovoked and unjustified beating of a pretrial detainee would be sufficient to violate
4  the Due Process Clause even though the plaintiff's injuries may not be considered significant or serious.

5  District court decisions applying the standards discussed in *White v. Roper* and *Hudson v.*
6  *McMillian* have reached differing conclusions based on the facts of the cases.  In *Cornejo v. United*
7  *States*, 1998 WL 255586 (N.D.Cal.), the plaintiff, a pretrial detainee, alleged that at the end of a federal
8  court hearing, he got up to assist his attorney who had nearly fallen down.  Plaintiff was told by the
9  marshal to sit down.  Plaintiff acknowledged that he did not immediately obey the marshal's command
10 and tried to explain why he was standing.  The marshal again rudely ordered plaintiff to sit down and
11 threatened to force him to do so if he did not comply.  Plaintiff acknowledged that he responded to the
12 marshal "very negatively," at which point he was assaulted by the marshal.  Plaintiff alleged that his
13 injuries required medical attention and that he suffered chronic pain and loss of dexterity in one finger.
14 In granting summary judgment for defendant, the court relied on *White* in holding that plaintiff's
15 undisputed actions created a need for the marshal to use reasonable physical force to control him.  The
16 court noted that plaintiff twice failed to comply with the marshal's instructions to sit down.  The court
17 held that the force applied was not excessive and plaintiff's injuries were consistent with the use of
18 reasonable force under the circumstances.  In *Muhammad v. Cardoza*, 1993 WL 169288 (N.D.Cal.), the
19 evidence was undisputed that plaintiff, a pretrial detainee, stood up after an officer told him to stop
20 speaking to persons in the courtroom.  The court held that the officer was justified in using reasonable
21 physical force to control the plaintiff.  Although the plaintiff claimed that he sustained severe physical
22 injuries, he did not produce any admissible evidence to prove that he was actually injured.  Because the
23 plaintiff failed to provide admissible evidence that he sustained injuries beyond those consistent with
24 the reasonable use of force, the court granted defendants summary judgment.

25 By contrast, in *Vega v. Alameida*, 2007 WL 214599 (E.D. Cal.), the court denied summary
26 judgment where the plaintiff claimed that he was beaten by two prison guards after he asked to speak to
27 the administrative segregation lieutenant concerning a complaint.  Plaintiff claimed that as he was being
28 escorted to his cell, he was punched, pushed to the floor and kicked without provocation by the guard.

8

Plaintiff sustained minor bruises on the corner of his eye, on his right shoulder and inside his lips consistent with being taken to the ground. Plaintiff also testified that his back was hurt. The defendants testified that plaintiff refused to return to his cell and then resisted the guards' efforts to physically control him. The court held that if a jury accepted plaintiff's version of events, it could reasonably find that plaintiff did nothing to warrant the use of any physical force and that the force used against him was therefore excessive. In *Guillory v. Rupf*, 2007 WL 2881954 (N.D.Cal. 2007), the plaintiff, a pre-trial detainee, alleged that a detention officer who was escorting him to a cell violently pushed his head into a door, slammed him to the floor and then punched him. A second officer also allegedly assaulted plaintiff. As a result of the incident, plaintiff alleged that he suffered a bruise to his back and sharp pains in his neck as well as sleeplessness and anxiety. The defendant officers testified, however, that as plaintiff was being escorted to a holding area, he broke free from the officer who then attempted to gain physical control over him. A struggle then ensued before the officers were able to reestablish control over the plaintiff. Viewing the evidence in the manner most favorable to plaintiff, the court denied the officers' motion for summary judgment because a reasonable jury could find that defendants' use of force was not reasonably related to a rational purpose or because it was excessive in relation to that purpose and was therefore committed to punish or harm the plaintiff.

       The cases cited by Defendants also involved situations in which the defendants were undisputably justified in using reasonable force on a prisoner or arrestee. *See Lacy v. City of Bolivar, Missouri*, 416 F.3d 723 (8th Cir. 2005) (officers' use of force to restrain and place plaintiff in handcuffs was objectively reasonable where plaintiff had made threats of violence to himself and others, disregarded officers' orders to go with them, and physically resisted being restrained and placed in handcuffs); *Burchett v. Kieffer*, 310 F.3d 937 (6th Cir. 2002) (officers executing a search warrant had reasonable cause to detain the plaintiff and did not use excessive force in handcuffing plaintiff who twisted and turned and resisted the officers' efforts to restrain him); and *Guzinski v. Hasselbach*, 920 F.Supp. 792 (E.D.Mich. 1996) (court granted defendant's unopposed motion for summary judgment which established that plaintiff had attempted to walk out of jail and ignored the officers' verbal warnings to stop.)

. . .

1    In this case, there is no dispute that Officer Leyba announced a lock down of the CCDC housing unit which required Plaintiff and the other inmates to return to their cells. Although Plaintiff's deposition testimony was somewhat evasive, he was clearly aware that he was required to return to his cell when the lock down was announced. For that reason, he put down the phone and approached the control room to request permission to continue with his call.[2] According to Plaintiff, Officer Leyba responded to his request by becoming agitated and telling him in a profane manner to go to his cell. Plaintiff acknowledges that he responded to Officer Leyba by saying "Your not talking to your F-ing kids." Plaintiff states that he was about to return to his cell when he made this statement. According to Plaintiff, Officer Leyba made no further statement or order but instead immediately came out of the control room and grabbed him by the neck or throat. Although Plaintiff states that he does not recall what occurred immediately thereafter, he appears to claim that he attempted to protect himself from the officers' blows rather than resist their efforts to subdue him.

Plaintiff's account contrasts with Defendants' statement in their unverified answers to interrogatories which Plaintiff attached to his Opposition (#41) as *Exhibit "A"*. According to Defendants' unsigned Answer to Interrogatory No. 3, Plaintiff crossed the redline located on the floor at the entrance to the control room which is prohibited. Officer Leyba instructed Plaintiff to go to his cell to which Plaintiff responded by telling Officer Leyba to "fuck off." Defendants state that Officers Leyba and Peal then exited the control room and approached Plaintiff and instructed him to place his hands behind his back. According to Defendants, Plaintiff refused to follow their instructions and then resisted efforts by several officers to exercise physical control over him and place him in handcuffs. Defendants' version of the incident as set forth in their Answer to Interrogatory No. 3, if accepted by the fact finder, would refute Plaintiff's allegation that the Defendants used excessive force. *White v. Roper, supra.* Defendants, however, purport to base their motion for summary judgment on Plaintiff's testimony and the video recording, presumably to avoid denial based on disputed issues of fact.

---

[2] The video recording shows that a number of inmates were still in the common area while Plaintiff was at the doorway of the control room and during the ensuing altercation. It does not appear from the video that other detainees responded to the lock down announcement by returning to their cells with any urgency or expedition.

      Defendants point out that in a jail or prison facility, order among the inmates is essential to ensuring the safety of the inmates and the officers. When an inmate resists restraint or otherwise disobeys orders, the potential exists for the incident to escalate into a greater disturbance. These are, of course, legitimate concerns, and the Defendants are entitled to wide deference in the "exercise of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson, supra*, 112 S.Ct. at 999. The "facts" cited by Defendants, however, are not indisputably supported by Plaintiff's testimony or the video recording. For example, Defendants contend that Plaintiff "challenged" Officer Leyba's order that he go to his cell. According to Plaintiff, however, he requested permission to complete his phone call to his attorney. In contrast to *White v. Roper* and the other decisions discussed above, under Plaintiff's version of events, the facts do not show that Plaintiff refused to comply with Officer Leyba's order to return to his cell, thereby justifying the immediate use of physical force against him. Plaintiff, at most, responded to Officer Leyba's order with brief "back-talk" that did not reasonably indicate his refusal to obey the order. In cases involving substantially similar allegations, courts have held that a prisoner's or detainee's verbal statements, absent refusal to comply with the officer's orders, does not justify the use of physical force. *See Ali v. Szabo*, 81 F.Supp.2d 447, 457-58 (S.D.N.Y. 2000) (plaintiff allegedly disputed the validity of the officer's order that he return to his cell while complying with the instruction); *Jackson v. California*, 2007 WL 210430 (E.D. Cal.) *8-9 (plaintiff allegedly was verbally abusive to prison guards, but did not engage in physical conduct that justified use of force against him.)

      Defendants also assert in their motion that "Plaintiff crossed the redline at the entrance to the control room – a line designated and used to protect the safety of the officers in the control room." *Motion (#38)*, p. 11. No affidavit or testimony is provided from any officer, however, regarding what instructions were given to inmates concerning this line such that Plaintiff's conduct in crossing the line and approaching the control room would reasonably be perceived by the officers as a threat to their safety, justifying an immediate use of force. While Defendants may be able to demonstrate at trial that Plaintiff's conduct in crossing the red line justified an immediate forceful response, Defendants have not provided such evidence to support their motion for summary judgment.

. . .

Defendants claim that the video recording supports their motion for summary judgment. Defendants rely on *Scott v. Harris*, 550 U.S. —, 127 S.Ct. 1769, 1776 (2007), which concerned whether a law enforcement officer could, consistent with the Fourth Amendment, use potentially deadly force to stop a fleeing motorist by ramming his car from behind. The key factual issue was whether the plaintiff was driving his vehicle in a reckless and dangerous manner such that the officer's decision to ram his speeding vehicle was reasonable. The Court relied on "undisputed" video evidence which clearly showed that plaintiff's driving endangered other motorists, pedestrians and pursuing officers. In holding that the defendant officer was entitled to judgment as a matter of law, the Court stated that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." The Court held that the video recording totally discredited plaintiff's claim that he was not driving in a reckless and dangerous manner and therefore warranted judgment for the defendant as a matter of law.

According to Defendants, "[t]he video surveillance of the unit clearly shows Officer Leyba did not grab Plaintiff's neck as alleged in the Amended Complaint. (Ex. C. at 09:99:23). Moreover the video shows that Plaintiff actively resisted arrest, so much so that more than a dozen officers responded and/or attempted to restrain Plaintiff. (See. Exh. C.)." *Motion (#38)*, p. 11. In the Court's opinion, the video recording is not so clearly determinative. The video recording shows that Officer Leyba initiated contact with Plaintiff in an aggressive manner. As indicated above, whether Officer Leyba's conduct was reasonable or justified depends on what was said immediately before this contact. Plaintiff's assertion that Officer Leyba grabbed him by the neck or throat is not necessarily contradicted by the video. It shows Officer Leyba exit the doorway and immediately reach up to Plaintiff's back and shoulder area. Both individuals immediately move out of camera view so that it is not possible to determine whether Officer Leyba proceeded to grab Plaintiff's neck or throat as he claims.[3] Although it

---

[3] The Court also notes that Plaintiff did not take a fighting or defensive stance before Officer Leyba made physical contact with him. Contrary to Defendants' argument, Plaintiff's testimony does not show that he took a stance to avoid being handcuffed. *See Motion (#38)*, p. 5. Rather, Plaintiff testified that it was possible that he "kind of" developed a base with his body in that he hunched down a

12

is clear from the video recording that a struggle then takes place as several officers arrive and join in, most of the struggle occurs outside camera view and Plaintiff's actions are not clearly visible. While the video recording is material, it requires testimony by those involved as to what was said and what transpired out of view of the camera.

Moreover, Plaintiff contends that once he was in handcuffs and being escorted by officers to another part of the jail, one of the officers slammed him headfirst into the rear wall of the elevator and he sustained injury to his face. According to Plaintiff's testimony, he was clearly not resisting the officers at that point, and the only arguable purpose for shoving him headfirst against the wall of the elevator was to cause him injury. If the jury believes this testimony, it could find that after Plaintiff was brought under physical control and order was restored, Defendants used unnecessary physical force to punish Plaintiff by slamming him headfirst into the elevator wall. *See Griffin v. Crippen*, 193 F.3d 89, 91 (2nd Cir. 1999) ("dismissal of the excessive force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him.") The Court therefore finds that based on Plaintiff's version of events, which is not clearly contradicted by the video recording, there is a genuine issue of material fact whether the Defendants used excessive physical force against Plaintiff in violation of his right to Due Process of law under the Fourteenth Amendment.

**C.      Whether Defendants Are Entitled to Summary Judgment Based On Qualified Immunity.**

Having concluded that there is a genuine issue of material fact whether the Defendants used excessive physical force in violation of Plaintiff's right to Due Process, the next question is whether Defendants are protected from suit based on qualified immunity. Qualified immunity provides an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001). To determine whether qualified immunity applies, the court engages in a two-part inquiry. First, the court must ask whether a constitutional right would have been violated on the facts alleged by the nonmoving party. If no constitutional right would have been violated based on the

---

little bit as the officers assaulted him. *Exhibit "A",* p. 41.

plaintiff's allegations, there is no necessity for further inquiry concerning qualified immunity. If a constitutional violation is established, then the court considers whether that right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This inquiry is wholly objective. *Rodis v. City and County of San Francisco*, 499 F.3d 1094, 1097 (9th Cir. 2007), *citing Brittain v. Hansen*, 451 F.3d 982, 988 (9th Cir. 2006). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Morgan v. Morgensen*, 465 F.3d 1041, 1046 (9th Cir 2006), quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed 2d 271 (1986). The determination of qualified immunity is a question of law for the court. *Saucier v. Katz, supra; Scott v. Harris*, 127 S.Ct. 1769, 1774.

   A pre-trial detainee's right to be free from excessive and brutal use of physical force is protected by the Due Process Clause. *Bell v. Wolfish,* 441 U.S. 520, 535-39, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *White v. Roper,* 901 F.2d 1501, 1507 (9th Cir.1990). As set forth in the preceding section, under Plaintiff's version of the facts, at least some of the Defendant officers used excessive force in violation of Plaintiff's right to due process of law. As *Saucier* instructs, the inquiry into whether the right is clearly established must be undertaken in light of the specific context of the case, meaning that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier,* 121 S.Ct. at 2156. *See also Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003). Where the material historical facts on which qualified immunity rests are genuinely disputed, the court cannot grant summary judgment based on qualified immunity. *Wilkins*, 350 F.3d at 955-56. A reasonable officer, in the position of Defendant Leyba, would not believe that he was legally justified in using physical force against a detainee who, in response to a general order to inmates to return to their cells, requested permission to complete a telephone call with his attorney. Nor would a reasonable officer believe he was reasonably justified in using physical force against a detainee who verbally responded to the officer's profanity laced order to return to his jail cell by stating that "Your not talking to your F-ing kids," but did not otherwise refuse or fail to comply with the officer's order. Nor would reasonable officers believe they were legally justified in slamming a handcuffed detainee head first into an elevator wall after the disturbance had ended and he was under their physical control. The Defendants have not submitted any affidavits by themselves or other witnesses regarding their

1  respective involvement, if any, in the May 31, 2006 incident. The Court is, therefore, constrained to
2  accept Plaintiff's statements in his affidavit that Officers Leyba, Peal, Boone and Aspiazu beat him
3  outside the view of the camera and that one or more of these officers were responsible for shoving him
4  head first into the elevator wall. Defendants, therefore, are not entitled to qualified immunity based on
5  Plaintiff's alleged version of events.

**D.   Whether Counts II and III of Plaintiff's Amended Complaint Should be Dismissed Based on His Failure to Identify the Responsible Defendants.**

In Count II of his Amended Complaint (#33), Plaintiff alleges that he was denied his Due Process rights prior to being placed in disciplinary segregation. Plaintiff alleges that three officers, Doe Defendants 1, 2 and 3 conducted a disciplinary hearing at his cell on June 1, 2006, less than 24 hours after the May 31st incident. At that time, Plaintiff was not provided with written notice of the charges against him or afforded an opportunity to prepare a defense to the charges. Plaintiff alleges that the Doe Defendants denied his request for a continuance so that he could learn exactly what he was charged with and obtain witnesses to support his defense. In Count III, Plaintiff alleges that he was placed in a segregation cell upon the orders of Doe Defendant 4. Plaintiff alleges that the conditions of this cell were dehumanizing due to its extremely nasty condition which included an inoperable toilet, no toilet paper and the presence of filth in the cell. Plaintiff also alleges that he was denied any clothing from June 1 to June 3, 2006 and that Doe Defendant 4 and other staff refused his requests to see the medical staff for the injuries he sustained in the May 31st altercation.

While a convicted prisoner has no liberty interest in being free from segregated confinement imposed as an expected condition of imprisonment, *Sandlin v. Conner*, 515 U.S. 472, 115 S.Ct. 2294, 132 L.Ed.2d 418 (1995), a pretrial detainee may not be punished by jail authorities for the crime for which he is charged. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996), the court held that a pretrial detainee may be subjected to disciplinary segregation as punishment for violation of jail rules only after a hearing to determine whether he, in fact, violated the rules. The court, citing *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935, held that a pretrial detainee who faces disciplinary proceedings has a right to call witnesses in his defense. Federal courts have also held, however, that pretrial detainees

15

may be subjected to administrative segregation without hearing if the condition is imposed for purposes of maintaining institutional security and not as punishment. *See Rapier v. Harris*, 172 F.3d 999 (7th Cir. 1999); *Peoples v. CCA Detention Centers*, 422 F.3d 1090 (10th Cir. 2005).

In this case, Defendants have not provided any evidence that Plaintiff was placed in administrative segregation for purposes of maintaining institutional security as opposed to punishing him for violation of jail rules. According to Plaintiff, the Doe Defendant officers conducted a disciplinary hearing, which supports an inference that the officers intended to punish Plaintiff for his conduct. Plaintiff's allegations that he was denied a proper hearing are, therefore, sufficient to allege a claim for violation of his Due Process Rights against the officers who conducted the hearing. Plaintiff's claim that Doe Defendant 4 subjected him to degrading and dehumanizing conditions based on the conditions of the segregation cell also alleges a violation of his Due Process Rights under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1448-49 (9th Cir. 1989)

Defendants' principal argument for dismissing Counts II and III of Plaintiff's amended complaint is his failure to identify Doe Defendants 1, 2, 3 and 4. In *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 980), the court stated that as a general rule, the use of "John Doe" to identify a defendant is not favored. The court also noted, however, that situations arise where the identity of the alleged defendants will not be known prior to filing the complaint and that in such circumstances, the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or the complaint would be dismissed on other grounds. In *Gillespie*, the *pro se* plaintiff served interrogatories which sought to obtain the names and addresses of the persons named as doe defendants. The court held that the district court abused its discretion in dismissing plaintiff's complaint without requiring defendants to answer the interrogatories since it was likely that the answers to interrogatories would have disclosed the identity of the John Doe defendants. In *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999), the court also held that the district court erred in dismissing plaintiff's civil rights claim without affording him the opportunity to conduct discovery to identify the prison guard who allegedly deprived him of his civil rights by denying him necessary medical treatment.

In this case, the Court entered a Scheduling Order (#31) in this case on May 2, 2007 which gave the parties sixty (60) days from the date of the order, i.e., until July 2, 2007, to amend pleadings and to add any additional parties.[4] The scheduling order also provided for a 90 day discovery period and required that discovery motions be filed within 80 days from the scheduling order. Defendants argue that Plaintiff had ample opportunity to discover the identities of the officers involved in the alleged deprivation of his constitutional rights as alleged in Counts II and III, but that Plaintiff failed to do so. Plaintiff attached to his Opposition a copy of Defendants' Answers to Interrogatories to All Named Defendants which were served by Defendants on July 19, 2007. *Opposition (#41), Exhibit "A."* The Court agrees with Defendants that none of the eleven interrogatories served by Plaintiff asked Defendants to identify the Doe Defendants 1, 2, 3 or 4. Plaintiff has also attached a copy of Requests for Production of Documents to All Named Defendants. *Opposition (#41), Exhibit "C."* Plaintiff's Request No. 3 asked Defendants to produce and permit Plaintiff to inspect any and all reports filed concerning the May 31, 2006 incident and subsequent disciplinary action regarding the incident. Such records, if they exist, may contain the identities of the Doe Defendants. *See Gillespie, supra.* It is unclear whether the named Defendants responded to Plaintiff's Requests for Production of Documents. Although Plaintiff sent a July 29, 2007 letter to Defendants' counsel requesting that Defendants provide the documents described in his requests for production and provide further answers to his interrogatories, he did not follow-up by filing a motion to compel discovery as he stated he would do. *See Defendants' Reply (#43), Exhibit "A-1."* Defendants filed their Motion for Summary Judgment on August 30, 2007, after the close of discovery and in compliance with the scheduling order.

Although a pro se litigant's pleadings and papers are held to a less stringent standard than those of represented parties, pro se litigants are not excused from following the rules and orders of the court, including the discovery rules. *Gordon v. County of Alameda*, 2007 WL 1750207 (N.D.Cal. ) *5; *Davidson v. Goord*, 215 F.R.D. 73, 78 (W.D.N.Y. 2003); *Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000). In this case, Plaintiff was afforded sufficient opportunity to pursue discovery to

---

[4] Pursuant to its Order (#32) filed on May 8, 2007 which partially dismissed Plaintiff's complaint, the Court gave Plaintiff until June 8, 2007 to file an amended complaint.

identify the Doe Defendants in Counts II and III of his Amended Complaint. Plaintiff did not diligently do so and accordingly his claims against Doe Defendants in Count II and III of his Amended Complaint should be dismissed.

## CONCLUSION

Based on the foregoing, the Court finds that there are genuine issues of material fact regarding Count I of Plaintiff's Amended Complaint in which he alleges that Defendants Leyba, Peal, Boone and Aspiazu used excessive physical force against him in violation of his right to Due Process of law under the Fourteenth Amendment. The Court further finds that under the facts alleged, the Defendants are not entitled to qualified immunity. The Court further finds that Counts II and Counts III of Plaintiff's Amended Complaint should be dismissed based on his failure to identify the John Doe Defendants named in said counts despite having had the opportunity to conduct discovery, obtain the identities, and amend his complaint accordingly.

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (#38) be **denied** as to Count I of Plaintiff's Amended Complaint and that it be **granted** as to Counts II and III.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 12th day of December, 2007.

_George Foley Jr._
GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE